In the Matter of A AND A ENERGY PROPERTIES, LTD., a Michigan corporation, Debtor.

W. B. McDONALD, George McDonald, Marion McDonald, David Chapman, and Delma Chapman, Plaintiffs,

v.

A & A PRODUCERS & OPERATORS COMPANY, et al., Defendants.

Bankruptcy No. 81–01658–W.
Adv. No. 81–1388–W.

United States Bankruptcy Court,
E. D. Michigan, S. D.

April 22, 1982.

**2.** If this were a criminal case, I might refer to this finding as a scotch verdict.

Harlen Ray Tiller, Oceana, W. Va., for W. B. McDonald, et al.

Joseph S. Radom, Southfield, Mich., Bruce B. Prillwitz, Detroit, Mich., for A and A Energy Properties, Ltd.

## MEMORANDUM OPINION AND ORDER

GEORGE E. WOODS, Bankruptcy Judge.

This action was originally filed in the Circuit Court of Logan County, West Virginia, by the plaintiffs in which they sought to have certain natural gas leases declared void and in which they claimed money damages. On September 1, 1981, upon application by the defendant, A & A, this cause of action was removed to the United States Bankruptcy Court for the Eastern District of Michigan.

The plaintiffs are the owners of a 214 acre parcel of real estate located in Logan County, West Virginia. A & A Producers & Operators Company is an assumed name of A and A Energy Properties, Ltd., a Michigan corporation, which on March 24, 1981 filed for protection under Chapter 11 of the Bankruptcy Reform Act of 1978.

On December 1, 1970, the plaintiffs entered into a written lease agreement whereby they leased the above mentioned real estate to POM Corporation for the purpose of exploring, drilling and operating oil and gas wells. In exchange for the lease of their lands, POM Corporation agreed to pay them 5/32 of the above gross sales of any oil and gas extracted from their property. The lease was signed by all of the plaintiffs but not by the lessee, POM Corporation. The lease was then recorded with the Clerk of the County Court of Logan County, West Virginia, in Lease Book 30, at page 185.

In the months of January and February, 1971, POM Corporation drilled five wells on the property. Four of the wells produced marketable quantities of natural gas. One did not produce any natural gas. The plaintiffs were paid their monthly 5/32 royalty interest by POM Corporation through a collection and disbursement agent, Hays and Company, located in Spencer, West Virginia. On August 28, 1973, POM Corporation assigned its interest in three of the five wells to A & A. This lease assignment was recorded on September 17, 1973 with the Clerk of the County Court of Logan County, West Virginia, in Lease Book 30, at page 745. The three wells assigned to A & A are as follows:

| Well Name | Status |
| --- | --- |
| P. A. McDonald # 111 | Non-Producing |
| P. A. McDonald # 112 | Producing |
| P. A. McDonald # 113 | Producing |

Paragraph 6 of the Lease provided:

"The leasehold estate created hereby may be assigned in whole or in part only after securing the written approval of the Lessors."

POM Corporation never obtained the written consent of the plaintiffs to assign its lease to A & A. Additionally, the non-producing well, P. A. McDonald # 111, was never placed into production by either POM

Corporation or A & A. Subsequent to the 1973 assignment, A & A continued to use Hays and Company as its collection and disbursement agent. Beginning in 1971 and continuing to the present date, any royalty checks received by the plaintiffs came from Hays and Company. From 1975 to the present date, the Hays and Company checks paid to the plaintiffs set forth the name of each well, the name of the well operator as A & A, the gross sales and the gross production. Additionally, since 1975, IRS 1099 Statement of Income forms were mailed by Hays and Company to the plaintiffs. These annual statements indicate the name of each well, that A & A was the well operator, and the total income received by each of the plaintiffs.

David G. Andreae was the president of A & A Energy Properties, Ltd. His responsibilities included overseeing the production of gas and making the necessary repairs and maintenance on the wells. It appears that while Mr. Andreae was an officer of A & A, no repair or maintenance work was performed on the gas lines on the plaintiffs' property, although Mr. David Chapman repeatedly complained to Mr. Andreae that the gas pipelines were leaking and needed repair.

In 1975, Mr. Andreae intended to rework and fracture the non-producing well, P. A. McDonald # 111. Mr. George McDonald objected to this rework, claiming the well had been abandoned by the operator. On August 14, 1975, an attorney for A & A in West Virginia wrote to Mr. McDonald advising him that A & A was the assignee of the three wells. Although Mr. McDonald admits that he received the letter, neither Mr. McDonald nor any of the other plaintiffs responded thereto. On September 4, 1975, the West Virginia attorney again wrote to Mr. McDonald. Mr. McDonald denies receiving this second letter.

Mr. Andreae was ejected from A & A on February 11, 1981, upon discovery that he had diverted over $1,000,000.00 of A & A property for his own use. During the period from June of 1979 to February of 1981, Mr. Andreae intercepted the royalty payments which were rightfully due from A & A to the plaintiffs. After Mr. Andreae was expelled from A & A, the company filed its Chapter 11 petition on March 24, 1981. In October, 1981, A & A applied to the Federal Bankruptcy Court for permission to pay the prepetition royalties which were diverted by Mr. Andreae but rightfully due to the landowners, including the plaintiffs. On December 17, 1981, this Honorable Court authorized A & A to pay the landowners the pre-petition royalties. A & A has paid these royalties to the plaintiffs, and the plaintiffs acknowledge receipt of these payments. From the time that A & A was appointed as debtor in possession, monthly royalty payments have been issued by Hays and Company to the plaintiffs.

An order was issued by this Court on February 10, 1982, compelling the parties involved to submit agreed upon facts and further ordering the parties to delineate the issues.

I.

### THE LEASE AGREEMENT

■ The Lease Agreement was not signed by POM Corporation. This fact in and of itself is insufficient to render the lease invalid. It is a general rule that to render a written lease valid and binding on the lessor, it is not essential that it be signed by the lessee. Such a lease may become effectual by virtue of its execution by the lessor and its delivery and acceptance by the lessee. 49 Am.Jur.2d, Landlord and Tenant, § 31. See also *Herndon v. Meadows*, 86 W.Va. 499, 103 S.E. 404 (1920). In this case, the lessors, plaintiffs herein, executed the Lease Agreement and allowed POM Corporation to enter the land and drill for gas. The parties conducted themselves as though the Lease Agreement was fully executed. POM drilled for the gas and the plaintiffs received their royalty checks. As between POM Corporation and the plaintiffs, the Lease Agreement was valid and enforceable.

## II.

### THE ASSIGNMENT BY POM

The plaintiffs concede the validity of the Lease Agreement. They argue that after the assignment by POM to A & A, the lease could not be enforced legally because of the restriction as to assignability previously mentioned in the recitation of facts.

■ Under West Virginia law, a covenant restricting the right of the lessee to assign its interest is valid and enforceable. West Virginia Code, § 36–4–11 (1931). The assignment by POM without prior written consent of the plaintiffs in 1973 appears therefore to be a breach of the Lease Agreement. The question then arises as to whether the plaintiffs waived their right to prior consent.

■ In the case where a lessor accepts payment of rent from an assignee, such an action will, absent special circumstances, be deemed to be conclusive evidence of a waiver of necessity of prior consent, since it is recognition of the assignee as tenant. 49 Am.Jur.2d, Landlord and Tenant, § 421. This rule is followed in West Virginia. *Kanawha-Gauley Coal & Coke Co. v. Sharp*, 73 W.Va. 427, 80 S.E. 781 (1914).

The facts show that the plaintiffs were aware of the assignment as early as 1975. All of the documents coming to the plaintiffs from Hays and Company reveal A & A as the operators of the wells. The plaintiff, George McDonald, admitted receiving a letter from A & A's attorney wherein the attorney informed Mr. McDonald that A & A was the assignee of the wells. In spite of this, the plaintiffs did nothing which would indicate they were unhappy with the assignment.

■ This Court would be hard pressed to find that the plaintiffs did not waive their right of prior consent when, for at least seven years, they were receiving their checks and income statements with A & A listed as the operator of the wells. Further, even if the plaintiffs did not have actual knowledge of the assignment they are charged with constructive knowledge of the pertinent facts and circumstances. The test of waiver is whether the plaintiffs knew or had the means or source of information from which, if pursued, the plaintiffs would have ascertained that A & A had claimed some right or claim of right from the plaintiffs by assignment. *Kanawha-Gauley, supra.*

This Court finds that the plaintiffs actually knew of the assignment or the claim of right and did nothing. In the alternative, this Court finds that the plaintiffs had the means or the source of information so that with diligence, the plaintiffs would have been able to determine A & A's claim of right. The plaintiffs therefore waived their rights to object to the assignment and are bound by such assignment.

## III.

### THE P. A. McDONALD # 111 WELL ABANDONMENT ISSUE

■ As to the plaintiffs' arguments that the failure of A & A to produce the P. A. McDonald # 111 well entitles the plaintiffs to at least a partial cancellation, this Court finds such argument without merit. Section 36–4–9a of the West Virginia Code creates a rebuttable legal presumption that:

"The failure of a person, firm, corporation, partnership or association to produce and sell or produce and use for its own purpose for a period of greater than 24 months, subsequent to the first day of July, 1979, oil and/or gas produced from such *leased premises* constitutes an intention to abandon any oil and/or gas well and oil and/or gas equipment situated on leased premises, including casing, rods, tubing, pumps, motors, lines, tanks, separators, and any other equipment used in the production of any oil and/or gas from any well or wells on said leasehold estate." (Emphasis added.)

The other wells operated on the leased premises by A & A are producing gas. This Court's reading of the statute interprets the above mentioned presumption to arise only when none of the other wells on the leased premises are producing. This is clearly not the case presented before this Court.

## IV.

### CONCLUSION

This Court finds the Lease Agreement was in full force and effect at the time of the assignment; that the plaintiffs knew or should have known of the assignment; that the plaintiffs further waived their rights to object to the assignment by receiving the royalty checks even when possessed of said knowledge; and that there has been no abandonment of the P. A. McDonald # 111 well.

Judgment is for the defendants.